IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: 400 WALNUT ASSOCIATES, L.P. | : : | CIVIL ACTION NO. 11-7439 |

DuBOIS, J.                                                                                                June 7, 2012

**M E M O R A N D U M**

## I.   INTRODUCTION

4th Walnut Associates, L.P. ("Creditor") appeals from a decision of the United States Bankruptcy Court for the Eastern District of Pennsylvania sustaining in part and denying in part the objections of 400 Walnut Associates, L.P. ("Debtor") to Creditor's Proof of Claim. For the reasons that follow, the Court reverses the ruling of the Bankruptcy Court with respect to Creditor's claim for pre-petition interest at the default rate. The case is remanded for further proceedings consistent with this Memorandum.

## II.  BACKGROUND

### A.   Factual Background

Debtor has owned a building at 4th and Walnut Streets in Philadelphia since May 2000. In re 400 Walnut Assocs. LP, 454 B.R. 601, 603 (Bankr. E.D. Pa. 2011). On February 20, 2004, Independence Community Bank lent Debtor $13.125 million to finance conversion of the building into residential apartments. In re 400 Walnut Assocs., L.P., 461 B.R. 308, 311 (Bankr. E.D. Pa. 2011). The loan was secured by a mortgage on the property. (Appellant's Br. 4.) In 2006, Sovereign Bank ("Sovereign") acquired Independence Community Bank and, with it, the

loan.  In re 400 Walnut, 461 B.R. at 311.

Debtor stopped making payments on the loan in mid-2009.[1]  In November 2009, Sovereign sent Debtor a letter formally declaring the loan to be in default.  Id.  The loan contract provided for "default rate interest": if a loan payment was past due by fifteen days or more, interest would accrue on the unpaid principal at an annual interest rate of sixteen percent (as opposed to the ordinary, nondefault rate of five percent).  (Multifamily Note, J.R. Ex. A.7 ¶ 8.)  The contract also provided, "Any forbearance by Lender in exercising any right or remedy under this Note, the Security Instrument or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of that or any other right or remedy."  (Id. ¶ 12.)

Sovereign sold the loan to Creditor on June 18, 2010, for $9.55 million.  In re 400 Walnut, 461 B.R. at 311. On July 2, 2010, Creditor informed Debtor that it had purchased the loan and declared Debtor in default.  Id.  Debtor filed a Chapter 11 bankruptcy petition on July 23, 2010, id., and Creditor submitted a Proof of Claim in the amount of $15,267,261.01, id. at 310.

B.     Procedural Background

Debtor filed an eight-count Complaint against Creditor in the United States Bankruptcy Court for the Eastern District of Pennsylvania on December 18, 2010, initiating an adversary proceeding within the already-ongoing bankruptcy proceedings.  See In re 400 Walnut Assocs., L.P., 454 B.R. 60, 65 (E.D. Pa. 2011).  One of Debtor's claims—the one at issue in this

---

[1]According to Creditor, Debtor stopped making payments in May 2009.  (Appellant's Br. 4.)  Debtor asserts that it "made all the monthly installment payments . . . through and including the month of June 2009."  (Appellee's Br. 4.)

appeal—was an objection to Creditor's Proof of Claim.  Creditor filed a motion to dismiss the remaining seven claims.  On March 31, 2011, the Bankruptcy Court granted the motion to dismiss with respect to six of the claims, all of which were based on state law.  Id. at 312.  The Bankruptcy Court denied the motion with respect to Debtor's claim for intentional interference with prospective contractual relations.  In re 400 Walnut, 454 B.R. at 81.[2]  On October 20, 2011, the Bankruptcy Court sustained in part and denied in part Debtor's objections to Creditor's Proof of Claim.  In re 400 Walnut, 461 B.R. 308.

### III.  LEGAL STANDARD

A district court reviewing a Bankruptcy Court's judgment on appeal applies a "clearly erroneous" standard to findings of fact.  See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999).  The court reviews the legal determinations de novo.  J.P. Fyfe, Inc. v. Bradco Supply Corp., 891 F.2d 66, 69 (3d Cir. 1989).

### IV.  DISCUSSION

This Memorandum begins by addressing Debtor's argument that the Court lacks jurisdiction to hear Creditor's appeal.  Second, it analyzes the merits question presented by Creditor's appeal.  Third, it discusses Debtor's claim that Sovereign waived its right to collect default interest and that Creditor is bound by that waiver.

#### A.  Jurisdiction

Debtor argues that this Court lacks jurisdiction to review the decision of the Bankruptcy Court.  Specifically, Debtor contends that the Bankruptcy Court's determination is not a final

---

[2]Chief Judge Raslavich bifurcated that claim from the current proceedings "for later disposition so that the matter of liquidating the 4th Walnut indebtedness might be resolved expeditiously."  In re 400 Walnut, 461 B.R. at 322 n.5.

judgment from which Creditor can appeal as of right, see 28 U.S.C. § 158(a)(1), and that the Court should not exercise its discretion to hear an interlocutory appeal under 28 U.S.C. § 158(a)(3). The Court concludes that this appeal is interlocutory but exercises its discretion to consider the appeal.

### 1.  28 U.S.C. § 158(a)(1)—Final Judgment

Debtor correctly asserts that the judgment in this case is not "final" within the meaning of 28 U.S.C. § 158(a)(1). Section 158(a)(1) gives district courts appellate jurisdiction over "final judgments, orders, and decrees" of bankruptcy courts. In bankruptcy cases, the Third Circuit has "'consider[ed] finality in a more pragmatic and less technical way . . . than in other situations.'" In re F/S Airlease II, Inc. v. Simon, 844 F.2d 99, 103 (3d Cir. 1988) (quoting In re Amatex Corp., 755 F.2d 1034, 1039 (3d Cir. 1985)). Nonetheless, "an order in an individual adversary proceeding is not final unless it 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" In re Truong, 513 F.3d 91, 94 (3d Cir. 2008) (quoting Bethel v. McAllister Bros., Inc., 81 F.3d 376, 381 (3d Cir. 1996)). "When an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).[3]

In this case, two claims remain from Debtor's eight-count Complaint: the claim that is the subject of this appeal, and a state-law claim for intentional interference with contract. See In re Walnut, 454 B.R. at 75. The decision from which Debtor appeals did not end the adversary

---

[3] Sections (a), (b), and (c) of Federal Rule of Civil Procedure 54 apply to adversary proceedings in bankruptcy. Fed. R. Bankr. P. 7054(a).

proceeding, because it resolved only one of the two claims. Moreover, the Bankruptcy Court did not "expressly determine[] that there [was] no just reason for delay" in entering final judgment on the objection to Creditor's Proof of Claim. Fed. R. Civ. P. 54(b). Thus, the judgment which is the subject of the appeal is interlocutory, and § 158(a)(1) does not apply.

### 2. 28 U.S.C. § 158(a)(3)—Interlocutory Appeal at Court's Discretion

Under 28 U.S.C. § 158(a)(3), a district court may grant leave to appeal from a bankruptcy court's interlocutory order or decree. Creditor did not file a motion for leave to appeal. However, the Court treats Creditor's notice of appeal as such a motion, and grants it. See Fed. R. Bankr. P. 8003(c) ("If a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court . . . may grant leave to appeal or direct that a motion for leave to appeal be filed. The district court . . . may also deny leave to appeal but in so doing shall consider the notice of appeal as a motion for leave to appeal.").

Neither § 158 nor the Federal Rules of Bankruptcy Procedure provide criteria to determine whether to grant leave to file an interlocutory appeal. Courts faced with this question have applied 28 U.S.C. § 1292(b), which sets forth the requirements for interlocutory appeals from district courts to the courts of appeals, by analogy. See Finkel v. Polichuk, No. 10-219, 2011 WL 2274176, at *2 (E.D. Pa. June 8, 2011); In re Sandenhill, Inc., 304 B.R. 692, 694 (E.D. Pa. 2004). Applying § 1292(b), a court may exercise its discretion to hear an interlocutory appeal only if the bankruptcy court's order (1) involves a "controlling question of law," (2) offers "substantial ground for difference of opinion" as to its correctness, and (3) if appealed immediately, "materially advance[s] the ultimate termination of the litigation." Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974). All three requirements are satisfied in this

case.

With respect to the first § 1292(b) factor, the Third Circuit has defined the "controlling question of law" requirement to "encompass at the very least every order which, if erroneous, would be reversible error on final appeal." Id. at 755. In this case, this Court concludes that the Bankruptcy Court erroneously applied an equitable standard to Creditor's claim for pre-petition default interest, and applying the correct standard changes the result. The question presented on appeal is thus purely legal and, if this Court is correct, the Bankruptcy Court's analysis would constitute reversible error on final appeal.

With respect to the second factor, there is "substantial ground for a difference of opinion" as to the correctness of the Bankruptcy Court's opinion. Two courts have already disagreed with the Bankruptcy Court's treatment of Creditor's claim for pre-petition default interest. See In re McElwee, No. 1-10-2566, 2012 WL 1548264, at *13 (Bankr. M.D. Pa. May 3, 2012); In re 785 Partners LLC, No. 11-13702, 2012 WL 1154282, at *4 (Bankr. S.D.N.Y. Apr. 9, 2012).

Finally, with respect to the third factor, deciding this appeal will advance the termination of the litigation. Chief Judge Raslavich bifurcated the calculation of Creditor's claim from other pending issues "so that the matter of liquidating the 4th Walnut indebtedness might be resolved expeditiously." In re 400 Walnut, 461 B.R. at 322 n.5. As he emphasized repeatedly in choosing that procedure, a precise quantification of the claims against Debtor is necessary in order to "deal . . . in an informed way" with whether Debtor's Chapter 11 bankruptcy plan is confirmable. (6/16/11 Hr'g Tr., Appellant's Reply Ex. 1, at 30.) Obtaining a correct calculation of Creditor's claim by resolving this appeal will thus aid materially in terminating the proceedings.

For these reasons, the Court treats Creditor's notice of appeal as a motion for leave to

appeal and grants that motion.

      B.      <u>The Question Presented</u>

The Court next turns to the merits question presented by Creditor: whether the Bankruptcy Court "erred in not allowing [Creditor] to apply the default rate of interest provided for in the [loan documents] to the princip[al] balance of the [l]oan . . . for the period beginning May 1, 2009 (the date of default indicated in the November 13, 2009 default notice) through July 23, 2010 (the date of the filing of the Debtor's bankruptcy petition)." (Appellant's Br. 1.) The Court concludes that the Bankruptcy Court applied the wrong legal standard to Debtor's claim for pre-petition default rate interest.

      **1.**      **The Bankruptcy Court's Opinion**

In its Proof of Claim, Creditor asserted that it was entitled to $15,267,261.27, plus attorneys' fees and costs. <u>In re 400 Walnut</u>, 461 B.R. at 310. The Bankruptcy Court allowed the claim in a total amount of $12,620,867.57. <u>Id.</u> Creditor appeals the Bankruptcy Court's determination that Creditor is not entitled to interest at the default rate for the period before Debtor filed its bankruptcy petition.

Schedule B to the Note underlying the loan provides as follows[4]:

> So long as any monthly installment or any other payment due under this Note remains past due for 15 days or more, interest under this Note shall accrue on the unpaid principal balance from the earlier of the due date of the first unpaid monthly installment or other payment due, as applicable, at a rate (the "Default Rate") equal to the lesser of Sixteen (16%) Percent per annum or the maximum interest rate which

---

[4]Schedule B modified paragraph 8 of the Note, which provided that if any payment was past due by thirty days or longer, interest would accrue at the lesser of four percentage points more than the contract rate or the maximum interest rate that could be collected under applicable law.

may be collected from Borrower under applicable law.

(J.R. Ex. 11, at B-1.)

Thus, under the loan contract, Creditor was entitled to collect sixteen percent annual interest on the unpaid principal balance after Debtor defaulted on its loan payments. The Bankruptcy Court, however, did not enforce that provision. Chief Judge Raslavich held that the claim for default interest was subject to an "equitable analysis" focusing on the risk of default, the reasonableness of the default rate, and "the effect of the higher rate on the Debtor's ability to reorganize." In re 400 Walnut, 461 B.R. at 315-16 (citing In re La Guardia Assocs., L.P., Nos. 04-34512, 04-34514, 2006 WL 6601650 (Bankr. E.D. Pa. Sept. 13, 2006)).

Based on an equitable analysis, the Bankruptcy Court concluded that Creditor was precluded from recovering interest at the default rate in this case for a number of reasons. Id. at 317. First, Creditor purchased the loan at a discount, which accounted for the fact that the loan was in default. Id. at 316. Second, the nondefault interest rate provided in the contract, five percent, was reasonable, and the increase from the contract rate to the default rate was excessive. Id. Finally, permitting Creditor to recover default interest would make it more difficult to confirm Debtor's Chapter 11 plan and would diminish the funds available to pay unsecured creditors. Id. at 317. Accordingly, the Bankruptcy Court held that "to the extent that the outstanding principal balance of [Creditor's] claim includes unpaid interest calculated at the default rate, it will be disallowed." Id. In so holding, the Bankruptcy Court did not distinguish between interest accruing pre-petition and post-petition.

### 2. Analysis

This Court concludes that the Bankruptcy Court applied an incorrect legal standard to

8

Creditor's claim for pre-petition default interest.  As explained below, an equitable analysis does not govern whether pre-petition default interest is allowable; instead, such a determination should be based on the terms of the loan documents and applicable state law.  The loan documents in this case clearly called for interest at the default rate, and Pennsylvania law does not bar interest at the rate specified in the loan contract.

The Bankruptcy Court incorrectly applied an equitable analysis to Creditor's entire claim for default interest, failing to distinguish between interest that accrued before and after Debtor filed its bankruptcy petition.  In doing so, the Bankruptcy Court relied on cases that were based on 11 U.S.C. § 506(b), which provides, in relevant part, as follows:

> To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).  Courts have interpreted 11 U.S.C. § 506(b) to impose a reasonableness standard on claims for interest and other charges.  See, e.g., In re Nunez, 317 B.R. 666, 668-69 (Bankr. E.D. Pa. 2004); In re Leatherland Corp., 302 B.R. 250, 258 (Bankr. N.D. Ohio 2003).  However, the Bankruptcy Court's reliance on § 506(b) with respect to claims for pre-petition interest is misplaced.

The majority view is that § 506(b) does not apply to interest and other charges that accrue before the filing of the bankruptcy petition.  See, e.g., In re Gledhill, 164 F.3d 1338, 1340 (10th Cir. 1999) ("[H]olders of an oversecured . . . claim are entitled to interest [and other costs] that accrue before the debtor's bankruptcy petition is filed.  Interest [and other costs] that accrue after the petition has been filed . . . are permitted only if authorized under 11 U.S.C. § 506(b)."); In re

9

Wesley, 455 B.R. 383, 387 (Bankr. D.N.J. 2011) ("[P]re-petition claims . . . are governed by section 502 and not prohibited under section 506(b) . . . ."); In re Nunez, 317 B.R. at 670 ("[S]ection 506(b) applies only to post-petition interest, fees and costs sought in a secured creditor's proof of claim.  The 'allowability' of pre-petition claims is governed by section 502 and not by section 506(b)."); Collier on Bankruptcy ¶ 506.04 (16th ed. 2012) ("The allowability of . . . prepetition amounts as part of the secured creditor's 'claim' is not determined by section 506, but is governed by section 502 in conjunction with other provisions of the Code.").  But see In re Welzel, 275 F.3d 1308, 1313-14 (11th Cir. 2001) (holding that § 506(b) "does not draw a distinction between [attorneys'] fees vested pre- or post-petition").[5]

The majority view is buttressed by the fact that interest and fees that accrue before the filing of the bankruptcy petition are already part of the underlying bankruptcy claim.  Further, the majority interpretation comports with the Supreme Court's explanation, albeit in a different context, that "[s]ection 506(b) allows a holder of an oversecured claim to recover, in addition to the prepetition amount of the claim, 'interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.'" United States v. Ron Pair Enters., Inc., 489 U.S. 235, 239-40 (1989) (emphasis added) (quoting 11 U.S.C. § 506(b)).  Thus, there is no "reasonableness" test for interest that accrues prior to the filing of the bankruptcy petition.

Subject to the waiver argument discussed below and any other defenses Debtor might raise on remand, Creditor may recover pre-petition default interest so long as the parties

---

[5]The Court of Appeals for the Third Circuit has not ruled on this issue.  Moreover, aside from the opinion from which Creditor appeals, the Court has found no lower-court authority in this Circuit espousing the minority view.

contracted for it and it is permitted under state law.  See In re 785 Partners, No. 11-13702, 2012 WL 1154282, at *4 (Bankr. S.D.N.Y. Apr. 9, 2012).  The parties agree that the loan contract expressly provided for default interest at an annual rate of sixteen percent.  In re 400 Walnut, 461 B.R. at 315.  Moreover, the parties cite no rule of Pennsylvania law that would disallow such interest, nor is the Court aware of any such rule.[6]  Courts in this District have enforced even higher default interest rates.  See, e.g., Stornawaye Props., Inc. v. Moses, 76 F. Supp. 2d 607, 613 (E.D. Pa. 1999) (enforcing a twenty-four-percent default interest rate).

The Bankruptcy Court thus applied an erroneous legal standard to Creditor's claim for pre-petition default interest, and its judgment is reversed on that ground.

    C.       Assignment and Waiver

Debtor argues that, even if claims for pre-petition default interest are not subject to an equitable analysis, Sovereign waived its contractual right to default interest for the period during which the loan was in default before Creditor acquired the loan.  Further, according to Debtor, Creditor is bound by that waiver as Sovereign's assignee.  The Bankruptcy Court, which did not decide the waiver issue in its opinion, should resolve that issue on remand.

Regardless of the outcome of the waiver analysis, Creditor is entitled to interest at the default rate for the period beginning on June 18, 2010—the date on which Creditor acquired the loan—and ending on July 23, 2010—the date on which Debtor filed its bankruptcy petition.  See, e.g., In re Nixon, 400 B.R. 27, 35 (Bankr. E.D. Pa. 2008) (holding that an assignee "had the right as of the date he acquired his interest in the loan documents to impose the [default] rate," even

---

[6]On loans of $50,000 or less, Pennsylvania law caps interest rates at six percent.  See 41 Pa. Cons. Stat. § 201(a).  Since the loan in this case exceeded $50,000, that provision does not apply.

though he was bound by the assignor's waiver of that right with respect to the period prior to the acquisition).

### V.     CONCLUSION

For the foregoing reasons, the Court treats Creditor's notice of appeal as a motion for leave to appeal and grants that motion. Creditor is entitled to pre-petition default rate interest accruing between June 18, 2010, and July 23, 2010. The matter is remanded to the Bankruptcy Court for further proceedings consistent with this Memorandum, including a determination whether 4th Walnut Associates, L.P. is entitled to pre-petition default interest accruing between the date of the default and June 18, 2010. An appropriate Order follows.